Please be seated. Thank you. Please call the next case. You may proceed, Counselor. Thank you. Good morning. My name is Catherine Levine, and I am here on behalf of the Respondent. I am pleased to be before you today to discuss the Respondent's Appeal from the Circuit Court Decisions Reversal of the Unanimous Decision rendered by the Commission, finding that Petitioner was not entitled to TTD benefits. Briefly, the Petitioner in this case was an employee who sustained a compensable injury, no dispute about that. Two days after his injury, he went to the company clinic and light-duty restrictions were imposed, and those restrictions were followed from the onset by the employer for a period of 15 months. On June 12, 2011, the Petitioner's employment with Respondent was terminated when they learned through store surveillance videotape that he had stolen cigarettes from his employer on more than one occasion. The case proceeded to trial on November 22, 2011, pursuant to 19B and 8A petitions filed by Petitioner's Counsel, seeking TTD and prospective medical. The Arbitrator awarded in Petitioner's favor, and Respondent appealed only on the issue of TTD. All other aspects of the Arbitrator's decision were accepted. In a unanimous decision on October 5, 2012, the Commission reversed the Arbitrator's findings that Petitioner was entitled to TTD benefits and found that his actions were tantamount to a refusal of light-duty work, which was one of the exceptions outlined in the Supreme Court's decision of interstate scaffolding. The Commission's decision was clear in prefacing that under the circumstances of this case, the Matusik case, they found that the Petitioner refused Respondent's ongoing offer of work within his physical restrictions. I believe that the Commission's use of the words, under the circumstances of this case, is very relevant and important in understanding the mindset, their mindset, in analyzing why this case was different than interstate scaffolding. I want to discuss with you the standard of review. We believe it is a manifest weight case. As you know, it is the province of the Commission to German factual issues such as causal connection, medical causation, whether an employee is entitled to TTD benefits and PPD benefits. And it is up to the Commission, as the fact finder, to decide what weight to be given to the evidence. And they are entitled to draw reasonable inferences from the evidence that is presented, and they are entitled to look to the credibility of the witnesses in assessing the case. Because of the Commission's expertise in the area of work comp, its findings should not be disturbed on review unless they are against the manifest weight of the evidence. And as you all well know, the test for whether the Commission's decision is supported by the manifest weight of the evidence is not whether the reviewing court might reach an opposite decision, but it's whether there is sufficient factual evidence in the record to support the Commission's decision. And, Justice Hoffman, if I may quote from you from the second case that was presented today, where you correctly pointed out that there could be Result A and Result B, as long as there is evidence in the record to support Result A, then the Commission's decision should be upheld. I would like to draw the Court's attention to Judge Wheaton's Circuit Court decision, her discussion, where she specifically stated, quote, this case can go either way. Those were her words. Given that she opined that way, there was no reason for her to reverse the Commission, because she is essentially stating that there is a factual basis for the Commission's decision. She then pointed out correctly how the facts of this case are different from interstate scaffolding, and she was 100% right about that. The only thing that's similar between Mr. Matusak's case and the interstate scaffolding case is that both individuals were terminated while working light duty. The evidence presented in the Matusak case is unrebutted and unequivocal, that he knew of a policy that was in place. He knew that what he was doing would violate the policy. He knew that by doing it, he would be immediately terminated. And he knew that that would constitute a refusal of work within his physical restrictions? He knew that he testified. He testified he knew it was wrong to steal a cigarette, right? No, no. He testified that he knew that he would be terminated. He also testified that he knew he would be removed from light duty work. That he knew that if he was terminated, he would no longer have that light duty work that was being accommodated for a period of 15 months already. Who wouldn't expect to get terminated from any job if they were caught stealing from their employer? Well, people who don't know if there's a policy in place. The facts of this case, the facts that were presented that were unrebutted show that the petitioner knew of the policy. Well, under your argument, though, I mean, it seems to me that anybody caught stealing by their employer then would be unable to draw TTD benefits because I think a good argument could be made that anybody in that position would know they're going to get terminated. Well, I think that it's a case, I really do believe that it's a case-by-case basis. So then how does that conform then to interstate scaffolding? You know, I mean, you could argue that just about any conduct that, in other words, you'd say any conduct that you know you're likely to be terminated, then you can't draw TTD and how does that square with interstate scaffolding? Well, no, I still do think that it's a factual analysis and I think that this case was fact-specific. I don't believe the commission was trying to create a new exception and carve out a new exception. I think that they made a reasonable inference from the facts that were presented, which we did not have in interstate scaffolding and quite frankly we haven't had in any other case these facts. So I think each situation like this has to be analyzed on a fact-by-fact basis to determine whether there is a reasonable basis to conclude the way the commission did. Here's a quote from interstate scaffolding. An employee who is entitled to receive workers' compensation benefits as a result of a work-related injury is later terminated for conduct unrelated to the injury. The employer's obligation to pay TTD workers' compensation benefits continues until the employee's medical condition has stabilized and he has reached MMI. How do you square that with this case? Yes, but the court also indicated that there were various exceptions and they outlined the exceptions, which are if an employer refuses to submit to medical or surgical or hospital treatment, he fails to cooperate in good faith with rehabilitation efforts, or he refuses work following within his physical restrictions prescribed by his doctor. And the court went through their analysis and they specifically inferred from the actions of the Petitioner that he met the third exception, that he refused work following within his restrictions prescribed by his doctor. You're saying that there's a missing link here. And I understand the logic of your position. If he clearly violates, willfully violates a policy that causes a termination, you're saying that's, and this is all you can say, it's tantamount to refusing to work. But I don't, I don't think it's, it's absolute. I still think you have to go through the process of determining whether you have an employee who is aware of a policy, whether the policy is being practiced. It wasn't like he didn't show up for work. It wasn't like he was calling in sick and said, I'm not going to work. He stole the cigarettes. That's why he lost his job. Is that correct? Yes. Yes. But he did it on more than one occasion, Judge, which we've not seen in any case. He, he came to court and acknowledged that he knew that this would remove him, that he knew he would no longer do light duty. And therefore, I think this case is different from any other case that's been before you. And that is what the point that the Commission was trying to make in their decision, that under the circumstances of this particular case, they were not trying to open this up and make it a broad exception. They were analyzing it based on the facts that were presented to them, and they made their decision based on theirs. And they are entitled to make those reasonable inferences as the Commission fact finder. So there is, and I'm thinking this thing through, a potential for abuse by employees, then, isn't there? By employees? Yes. Somebody could say, I'm going to get myself fired and sit home and collect DTD. Yes. There's the potential for that. There's a policy issue there, too. There is a policy issue. But the Commission didn't address that, and I really am not trying to address that either. I'm trying to get exactly what interstate scaffold permits. Isn't it what they permit? Interstate scaffold permits it. An employee can be drawing DTD. He doesn't want to do part-time work, so he goes to work and purposely gets himself fired. I agree. Under interstate scaffold, he's entitled to collect DTD until he reaches MMI. It's just that simple. It's a problematic. The Supreme Court was given a special concurrence in that case that could have solved the problem. They didn't adopt it. Justice Donovan wrote a special concurrence that said there has to be a determination as to whether the firing was pretextual. If the firing was not pretextual, then the DTD stops. If the firing is pretextual, it goes on. The Supreme Court didn't choose to go down that road. Right. He took the absolute road. As long as he's not reached MMI, he collects the DTD. Yes, but we can't forget that they specifically outlined exceptions within their decision. The exceptions are statutory. Right. Those are statutory. They didn't create those exceptions. Well, they discussed them, and so they're there, and they're for the commission to use. And the commission did that in this case. They analyzed whether the facts of this case fall right into one of those. Which is, again, the third one. The third one, the rejection of light-duty work prescribed by the doctor. Okay. So they found that this was a rejection by the claimant, correct? They found that his actions. Of light-duty work. Is that what you're saying? They found that his actions, based on the factual testimony. Let's not get into it. Let's not be a lawyer. Let's do a general. Sure. Well, yes, they did. They found that his actions were tantamount to a refusal of light-duty work. It would be the case any time an employee is fired for violating anything that's in the handbook. If they have a worker's handbook that says you can be fired for not bringing your lunch in a brown paper bag, and the guy knows that, and he gets fired for not bringing his lunch, you're going to make the same arguments. Oh, no, he knew he could be fired. That's a refusal to work. Well, I still think you have to go through the factual analysis, and I don't think that's the same case. Well, what's the factual analysis? I still think you have to determine whether the policy is there. It's in place. He knew about it. He knowingly violated it once or many times, as in this case, many times. I think that was the crux for the commission, is that he didn't just do it once. Oh, I have news for you. In interstate scaffolding, that claimant knew that writing on the employer's walls would get him fired. No, he did not. I don't have to disagree with you. There are other employees that wrote on the walls. The other employees broke those rules, and he, if you, the court specifically stated in its decision, Justice, that the petitioner did not know that that was the reason for his termination. The fact of the matter is, they didn't go down the pretextual road. They had, interstate scaffolding had every right in the world to fire that man for what he did, and the Supreme Court said, too bad, I'll pay him TTD. Well, I don't think that the commission went down that road either, which is what the circuit court judge said that they did, and they did not. They did not look at the reason. They didn't analyze it. They didn't determine if it was correct or not correct. They looked at his actions, the testimony he presented, and determined that that was an inference of a refusal of light-duty work. Isn't this just a basic general policy the Supreme Court came up with, that, okay, there's an injury, work-related injury, you're getting TTD, anything that happens subsequently just doesn't cut off the TTD? I don't believe that it would. If it was, if that was their intent. Isn't that really what, isn't that the general policy the Supreme Court, underlyingly maybe not artfully articulated? I think that the general policy, there's not an automatic mechanical approach to terminating it, and that your, the commission is not allowed to analyze whether the discharge was proper or not. That's what I think came out of interstate scaffolding. But I also think what interstate... Again, the policy is, look at the act. They directed you to the act, and they said, this is a statutory enactment. There's no exceptions here. We just look at eligible for TTD, yes. When does it terminate? MMI. That's an intervening event. That's not a complicated case from a general policy. As long as the reason for termination is totally unrelated to the underlying injury. And that's exactly what they said. I mean, Justice Stewart read it to you. It couldn't be plainer. As long as what he was fired for is unrelated to the underlying injury, TTD has to be paid. Well, we respectfully disagree. We think that the case addresses circumstances in which TTD can be terminated, and we believe the commission looks to those circumstances. And in interstate scaffolding, the issue is not presented, and the court specifically stated, here are these three factors. None of these exist in this case. Counsel, let me ask you a different question, and that relates to the standard of review. You argued for a manifest weight standard to be applied here reviewing the commission decision. The commission's decision really is predicated on its interpretation of interstate scaffolding. And, in fact, it says that the commission interprets that the interstate scaffolding commission does not eliminate all circumstances under which its claimant may lose its TTD benefits. We do not believe that interstate scaffolding decision stands for the proposition that an injured employee whose employment has been terminated has an unqualified or absolute right to temporary total disability benefits, so long as the employee's condition is not stabilized and the employee is under light-duty restrictions. It goes on in several more paragraphs to interpret the interstate scaffolding decision, and really that is the predicate for its decision. Wouldn't that call for a de novo review? Well, it could, except that the manifest weight asks us to look at the factual evidence in the record and whether it supports the commission's decision, and I believe that it does. If they use the wrong law, if they applied the wrong law to the facts, that would be a de novo issue, whether or not they applied the law correctly. Right. Thank you. Thank you, counsel. Morning. Please, the court. Counsel Stephen Smalling on behalf of the petitioner in this case, Walter Matuszak. So is interstate scaffolding controlled? That's the only issue? Yes. And the commission in its final paragraph seemed to say that it is vested with some discretion in terminating TTD benefits in certain cases. I've read this decision 15 times. I don't see it in there. It's not in there. Mr. Matuszak's entitlement to temporary total disability benefits is governed by the Act. As I point out in the brief, the commission's powers are limited or authorities to those powers which are granted by the legislature.  I appreciate what Wal-Mart's up here saying and what every other employer is going to say in response to, or has said in response to international, or excuse me, to interstate scaffolding. We've got crazy scenarios. Should they get TTD? Right. Employers could potentially abuse them. Sure. The concurrence maybe would have solved that. As I point out in my brief, the Illinois House Bill 1342, which I think a reasonable inference was that was submitted in response to interstate scaffolding, would have solved the problem. I don't know why it didn't go anywhere. It pointed out legislation. I can give you some ideas, but I won't. Not on the record, that is. Or not on the tape, that is. And one of the biggest concerns, once again, I think interstate scaffolding is the beginning and the end of this discussion, but what counsel is suggesting is we're going to turn it into some sort of mini Department of Employment security. Because, and as the dissent in interstate scaffolding pointed out with the Seagrace case, you've got to have some format. You've got to have some guidelines if you're going to start talking about termination of employment and volitional conduct. And there was four points they put in. The employee violated a rule. The employee was fired because of that. Violation would ordinarily result in termination of a non-disabled employee. And the violation was voluntarily and not caused by the disability. We're going to add another criteria to that laundry list from Seagrace and now say that we now have to show that the employee knew such conduct would result in his termination. Well, first of all, those guidelines aren't the law. They're not contained in the act. And second of all, Wally Matuszek, as Justice Hoffman pointed out, theoretically as an employee at will, especially at Wal-Mart, he could have been fired for wearing the wrong colored socks on that day. So are we going to have this rule for Wally who walks in and gets fired for not having the right, I mean, is it equal to him? Or how about the union autoworker who's got six levels of appeal through a grievance process and his labor contract? It's just disparity. It wouldn't work. Once again, beating a dead horse, interstate scaffolding, the side of this case before it should have even been heard, and there are remedies and it lies in Springfield. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, counsel, both. This matter will be taken under advisement. This position shall issue.